PARIENTE, J., dissenting.
I begin with the acknowledgment that the conduct of Ms. Kinsella, freshly out of law school and having passed the Florida Bar Exam, cannot be excused when she stole $140, $100, and $520 from Kohl's Department store where she was working over a two-week period. But, as Kinsella does not attempt to justify her actions, has shown extreme remorse, and never contested the charges filed by The Florida Bar, the only question in this case is the appropriate sanction: Should Kinsella be given a ten-day suspension, as recommended by the referee who observed Ms. Kinsella, a ninety-one day suspension as requested by The Florida Bar, a three-year suspension as held by the majority of this Court, or disbarred as urged by the dissent?
*1052 I agree with the per curiam opinion that any act of theft requires a sanction more severe than a short nonrehabilitative suspension. In fact, Ms. Kinsella has already been suspended by order of this Court.[2] However, the circumstances of this case do not compare to other theft cases where this Court has imposed three-year suspensions or disbarment. A three-year suspension is simply disproportionate to the conduct in this case and I would impose the sanction sought by The Florida Bar-a ninety-one day suspension.
While certainly not dispositive, the prosecutor in Kinsella's criminal case determined that Kinsella should be able to enter a no contest plea to only the first-degree misdemeanor charge of petit theft. Additionally, the prosecutor requested that adjudication be withheld and the court impose probation with specific conditions-all of with which Kinsella complied.[3] Additionally, the referee found multiple mitigating factors, which the per curiam opinion acknowledges stating, "In this case, both the State Attorney and the referee found that Kinsella's conduct warranted mercy." Per curiam op. at 1049. However, the per curiam opinion uses this and other mitigating factors to justify the imposition of a three-year suspension rather than disbarment. I, conversely, would conclude that the extensive mitigation in this case warrants the imposition of a rehabilitative suspension of one year, which is far closer to the Bar's request for a ninety-one day suspension.
While neither the referee's recommendations nor The Florida Bar's requested sanctions are binding on this Court, in my view, they should not be ignored. I know this Court has become increasingly tough on attorneys who violate the Rules Regulating the Florida Bar, but we must keep in mind the facts and circumstances of each individual case and the purposes of Florida Bar discipline.
A Three-Year Suspension Is Not Warranted
As noted by the per curiam opinion, the referee found seven mitigating factors, including that Kinsella showed remorse, made a timely good faith effort to make restitution, made a full and free disclosure to the Bar, and had a cooperative attitude toward the proceedings. In addition, she has taken substantial steps to avoid problems in the future. All of these factors paint Kinsella as a young attorney who exercised extremely poor judgment and has taken full responsibility for her actions. Additionally, though the referee found three aggravating factors, two of those factors-a pattern of misconduct and multiple acts of misconduct-arise from the same underlying conduct.
Moreover, in her response, Kinsella indicated that she had spent the majority of her brief legal career before her suspension volunteering for the Legal Aid Foundation, "providing legal advice through a helpline to those who cannot afford a private attorney." Resp. to Order to Show Cause at 4. Indeed, Kinsella "hopes to continue work as a legal aid or non-profit attorney when the Court deems [her]
*1053 able." Id. Kinsella "believes this is the best way for her to serve the public." Id.
Our case law also supports this conclusion. The cases cited by the per curiam opinion are distinguishable and consequently unhelpful in this case. First, the misconduct in all three cases is significantly more egregious than the misconduct in this case. For example, the attorney in Florida Bar v. Anderson , 594 So.2d 302 (Fla. 1992), pleaded no contest to three third-degree felony charges, for which adjudication was withheld, while the attorney in Florida Bar v. De la Torre , 994 So.2d 1032, 1033-34 (Fla. 2008), entered no contest pleas to five criminal offenses, two of which were felonies, and adjudication was withheld. Anderson , 594 So.2d at 303 ; De la Torre , 994 So.2d at 1033-34. Conversely, in this case, Kinsella pled no contest to one misdemeanor charge of petit theft and adjudication of guilt was withheld. Additionally, the attorney in Florida Bar v. Del Pino , 955 So.2d 556 (Fla. 2007), was suspended for three years following a conviction for mail fraud and tax evasion. Id. at 558. Certainly Kinsella stealing less than $1,000 from her employer, while serious, is not the same kind or degree of misconduct as that of Del Pino.
Indeed, there does not appear to be a case from this Court that is directly on point. However, examining the conduct in the following cases illustrates that Kinsella's misconduct does not rise to that of attorneys who have historically been suspended from the practice of law for three years. Kinsella's misconduct is considerably less severe than that of other attorneys who have received equal or even lesser sanctions.
For example, in Florida Bar v. Arcia , 848 So.2d 296 (Fla. 2003), this Court held that an attorney's theft of funds from his law firm employer warranted a three-year suspension, followed by a three-year probationary period. Specifically, while Arcia was employed as an associate at the law firm of Zarco and Pardo, P.A., he formed his own one-man law firm, which was in direct competition with Zarco and Pardo, P.A. Id. at 297. Arcia solicited clients from Zarco and Pardo for his own benefit by intercepting telephone calls directed to the firm. Additionally, on several occasions he deposited fees he had obtained representing Zarco and Pardo's clients or prospective clients into his solo-firm's bank account. Id. Arcia admitted "to depriving the firm of about $62,000 in legal fees. During the 1½ to 2-year span of Arcia's misconduct, the firm paid him bonuses." Id.
Likewise, in Florida Bar v. Winters , 104 So.3d 299 (Fla. 2012), two attorneys participated in the following misconduct:
Winters and Yonker made secret plans to leave the Mulholland Firm and begin practicing together, and that in the process, Winters and Yonker: (1) themselves and through a former paralegal for the Mulholland Firm, solicited Mulholland Firm clients to terminate representation by the Mulholland Firm and be represented by Winters' and Yonker's new firm; (2) made misrepresentations to the Mulholland Firm and to Mulholland Firm clients; (3) made copies of and took possession of Mulholland Firm client files without authorization; and (4) improperly used a third attorney's name, who never actually joined the new firm, in their new firm name on documents.
Id. at 300. Ultimately, the Court imposed a ninety-one day suspension for Winters and a sixty-day nonrehabilitative suspension for Yonker. Id. at 303.
Most recently, this Court imposed a one-year suspension for an attorney who converted $500 in client funds for his own use. See Fla. Bar v. Wynn , 210 So.3d 1271, 1272 (Fla. 2017). In doing so, we noted that "misuse or misappropriation of client funds *1054 is one of the most serious offenses a lawyer can commit." Id. at 1274.
Likewise, just this year, we approved an eighteen-month suspension for an attorney who knowingly signed and provided to a lender a real estate closing statement containing incorrect statements about closing funds. Fla. Bar v. Perez , No. SC16-111, 2018 WL 2731612, at *1 (Fla. Jun. 7, 2018). In that case, Perez prepared a closing statement reflecting that approximately $3 million in cash would be brought to the closing by the buyer, when, in fact, the total of the buyer's contribution consisted of $1.5 million in cash and a promissory note in favor of the seller of approximately $1.5 million. Order at 1, Fla. Bar v. Perez , No. SC16-111 (Fla. Oct. 20, 2017) (disapproving referee's report and remanding back to the referee for additional proceedings). Perez acknowledged that he purposely reflected the down payment inaccurately, but did not see a problem with doing so because he was directed to do so by the loan officer. Id. Certainly, Kinsella's acts of dishonesty are not so much more egregious than Perez's to warrant double the length of suspension. Additionally, there is far more mitigation in this case than was present in Perez .
Disbarment Is Not Warranted
I also disagree with the dissenting views that disbarment is warranted in this case and take particular issue with the assertion of Justice Lewis that "[t]he imposition of a three-year suspension, rather than disbarment, is a black eye on this Court's attorney misconduct jurisprudence." Dissenting op. at 1055 (Lewis, J.); see also dissenting op. at 1051 (Canady, C.J.). For obvious reasons, the facts in this case are far from analogous to cases where we have disbarred lawyers for trust account violations. Indeed, the majority of the cases upon which Justice Lewis relies involve just that-trust account violations, misappropriation of client funds, or other kinds of theft related to the practice of law. See dissenting op. at 1055-56 (Lewis, J.).[4] While Kinsella's conduct cannot and should not go unpunished, this case of a young woman who made a serious mistake unrelated to the practice of law, has made full restitution, and has exhibited extreme remorse is not comparable to cases involving misuse of client or law firm funds where this Court has disbarred attorneys.
In fact, the three-year suspension that the Court imposes is the longest rehabilitative suspension before disbarment, which is a five-year period and then requires the attorney to retake The Florida Bar examination and demonstrate rehabilitation. This harsh sanction requires that Kinsella would have to apply to The Florida Bar for reinstatement following the suspension and prove significant rehabilitation. See R. Regulating Fla. Bar 3-5.1(e). There is no guarantee that Kinsella would be reinstated, especially where there were acts of dishonesty. See R. Regulating Fla. Bar 3-7.10(f)(1) ("A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of *1055 a petitioner may constitute a basis for denial of reinstatement."). Finally, Kinsella would not be reinstated absent positive action showing rehabilitation and "personal assurances, supported by corroborating evidence, of a desire and intention to conduct [herself] in an exemplary fashion in the future." See R. Regulating Fla. Bar 3-7.10(f)(3)(E).
CONCLUSION
The Court's imposition of a three-year suspension is simply not supported by this Court's precedent. Moreover, I cannot agree that the harsh sanction imposed in this case serves the three-pronged purpose of attorney discipline: (1) it is fair to society; (2) it is fair to the respondent; and (3) it is severe enough to deter other attorneys from similar misconduct. See Fla. Bar v. Lawless , 640 So.2d 1098, 1100 (Fla. 1994).
Kinsella was punished in a criminal court of law and has paid her debt to society. Both the State Attorney and the referee concluded that Kinsella's misconduct did not warrant a severe sanction. Even the Bar has not advocated for a suspension greater than ninety-one days in this case. In light of all of these findings, it is clear that the Court's imposition of a three-year suspension is unnecessary and overly harsh. And, certainly, the findings do not justify the dissents' view that disbarment is warranted. Thus, I would follow the Bar's recommendation and impose a suspension ranging anywhere from ninety-one days to one year.
Accordingly, I dissent.

Order to Show Cause (Fla. Feb. 15, 2018) ("[T]he Court has determined that Respondent should receive at least a 91-day rehabilitative suspension.... [T]he Court hereby commands Jacqueline Marie Kinsella to show cause on or before March 19, 2018, why the referee's recommended sanction should not be disapproved and a more severe sanction, up to and including disbarment, be imposed.").

In order for the trial court to agree to adjudication being withheld, there would have been a finding that "the defendant is not likely again to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law." § 948.01(2), Fla. Stat. (2018).

The dissenting opinion of Justice Lewis relies on Anderson , because the theft there was not related to the practice of law. 594 So.2d at 303. Indeed, Anderson involved an attorney who "converted publicly owned funds to pay off her personal credit-card debt" while working as an executive assistant with the Tampa Housing Authority. Id. However, in that case, The Florida Bar specifically requested disbarment and the referee recommended a three-year suspension. Id. at 302. Additionally, and significantly, this Court held that it was the theft of public funds that made it analogous to the theft of trust account funds. Id. at 303. In addition, the illegal conduct in that case was far more sophisticated as the attorney "forged a signature on two checks and submitted three Housing Authority money orders in payment for debts [she] owed" her credit card company. Id. The total amount involved in that case was $4,500 in public money. Id.